IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CHRISTINE W-F.,[1]    )
                      )
     Plaintiff,       )
                      )
vs.                   )    Case No. 17-cv-1306-CJP[2]
                      )
COMMISSIONER OF SOCIAL)
SECURITY,             )
                      )
     Defendant.       )

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff, represented by counsel, seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for disability benefits in October 2013, alleging disability as of January 1, 2009. She later amended the onset date to May 1, 2012. After holding an evidentiary hearing, ALJ Stephen M. Hanekamp denied the application on April 5, 2017. (Tr. 11-22). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

---

[1] The Court will not use plaintiff's full name in this Memorandum and Order in order to protect her privacy. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.
[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 22.

## Issues Raised by Plaintiff

Plaintiff raises the following points:

1. The ALJ erred in not designating her osteoarthritis of the left ankle as a severe impairment and in failing to consider the effect of that condition in combination with her other impairments.

2. The ALJ failed to properly consider RFC in that he ignored the effect of her osteoarthritis of the left ankle.

## Applicable Legal Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes and regulations. For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v.*

*Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## **The Decision of the ALJ**

ALJ Hanekamp followed the five-step analytical framework described above.

He determined that plaintiff had not worked at the level of substantial gainful activity since the alleged onset date and that she was insured for DIB only through December 31, 2016. He found that plaintiff had severe impairments of degenerative disc disease with mild thoracolumbar scoliosis, left greater trochanter bursitis, left shoulder impingement, mild right carpal tunnel syndrome, and obesity. He found that her ankle symptoms were not severe impairments because the evidence did not establish that they had persisted for 12 continuous months.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform work at the light exertional level, limited to occasional balancing, kneeling, stooping, crouching, crawling, and climbing of ramps and stairs; no pushing/pulling of leg controls, but she was able to operate foot pedals; and only frequent handling and fingering with the right upper extremity.

Based on the testimony of a vocational expert, the ALJ concluded that plaintiff could do her past work as a retail clerk.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

1. **Agency Forms**

Plaintiff was born in 1959 and was 53 years old on the alleged date of onset. She was 57 years old on the date last insured. (Tr. 171). She had worked as a

retail cashier from 2003 to 2011.  (Tr. 175).

In November 2013, plaintiff reported that she had "constant pain" in her back and left foot.  (Tr. 184).  She used a CAM walker for her ankle and foot, and a cane.[3]  (Tr. 190).

### 2.  Evidentiary Hearing

Plaintiff was represented by an attorney at the evidentiary hearing in December 2016.  (Tr. 30).

Plaintiff worked as a cashier in a retail store.  She stopped working because she was having panic attacks.  (Tr. 33-34).

Plaintiff saw a podiatrist for left ankle pain in September 2011.  He prescribed a CAM walker boot.  She still used it when her pain got severe.  In September 2013, the podiatrist offered surgery, which would include fusion of her ankle.  She declined because he offered no guarantee that the arthritis would not come back and she "would literally have to drag my foot because [her] ankle would no longer be movable."  (Tr. 37-38).

A vocational expert (VE) also testified.  The ALJ asked him a hypothetical question which corresponded to the ultimate RFC findings.  The VE testified that this person could do plaintiff's past work as it is generally performed at the light level.  (Tr. 45-47).

### 3.  Medical Records

---

[3] CAM stands for "controlled ankle movement."  A CAM walker is a removable medical boot.  See, e.g., www.braceability.com/collections/cam-walker-boots, visited on October 2, 2018.

Plaintiff saw Brian Martin, D.P.M., on September 30, 2011, for pain in the left ankle. Dr. Martin practiced at Next Step Foot and Ankle Center. She was 5'6" tall and weighed 280 pounds. On exam, she had moderate edema in the left ankle and limited range of motion. X-rays showed "a narrowing of the ankle joint, consistent with osteoarthritis." She was placed in a CAM walker and prescribed Feldene for inflammatory control. She was to return in 3 weeks. (Tr. 483).

The next note from Dr. Martin is dated August 21, 2013. Exam "still shows significant arthritic changes to the left ankle." She had "virtually no range of motion at this time due to these changes." There was mild edema surrounding the ankle. She was again advised to use a CAM walker and to take Feldene and use a topical anti-inflammatory. She returned in a month. The doctor wrote that she "has been informed of the findings of arthritis in the ankle and surgical options have been discussed." She did not want surgery. The doctor informed her that there were no other options available other than what had already been tried. She was told to continue to use a topical anti-inflammatory and the "boots and braces that she was given previously." (Tr. 484-485).

Dr. Vittal Chapa performed a consultative exam in March 2014. Plaintiff said she had back pain, diabetes, and high blood pressure. She said she had osteoarthritis of the left ankle. She had been prescribed a walking boot because of left ankle pain. She said she could not put weight on the left foot without the walking boot. On exam, she had a full range of motion of all joints, including the left ankle. There was no edema in the lower extremities. Dr. Chapa stated that

plaintiff "walks with the walking boot on the left foot."   (Tr. 421-424).

In September 2015, Dr. Martin saw plaintiff for pain in both heels.  He diagnosed plantar fasciitis and tenosynovitis of the foot and ankle. (Tr. 493-495).

Plaintiff was treated at Comprehensive Pain Specialists for lumbar pain radiating into the left leg in November and December 2015.  She was prescribed a back brace.  (Tr. 458-481).

Plaintiff saw Dr. Thouvenot, who also practiced at Next Step Foot and Ankle Center, Martin, in 2016 for pain in the right foot and ankle.  She was diagnosed with a sprain of the right ankle. (Tr. 486-492).

It is unclear whether the complete records of Next Step Foot and Ankle Center are in the transcript.  Tr. 486 is a note dated August 29, 2016.  At the bottom of that page is the notation "Page 4 of 42," suggesting that there are 42 pages of records.  However, there are only 13 pages of records from Next Step Foot and Ankle Center in the transcript.

## Analysis

Both of plaintiff's points concern the ALJ's consideration of her left ankle arthritis.

As plaintiff concedes, the failure to designate an impairment as "severe" is not, standing alone, an error requiring remand.  At step 2 of the sequential analysis, the ALJ must determine whether the claimant has one or more severe impairments.  This is only a "threshold issue," and, as long as the ALJ finds at least one severe impairment, he must continue on with the analysis.  And, at Step

4, he must consider the combined effect of all impairments, severe and non-severe. Therefore, a failure to designate a particular impairment as "severe" at Step 2 does not matter to the outcome of the case as long as the ALJ finds that the claimant has at least one severe impairment. *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012), citing *Castile v. Astrue*, 617 F.3d 923, 927-928 (7th Cir. 2010).

Plaintiff is correct, though, that the failure to consider the effect of her left ankle arthritis in combination with her other impairments requires remand.

"When assessing if a claimant is disabled, an ALJ must account for the combined effects of the claimant's impairments, including those that are not themselves severe enough to support a disability claim." *Spicher v. Berryhill*, 898 F.3d 754, 759 (7th Cir. 2018). The medical records establish that plaintiff has arthritis in her left ankle, and she was treated for same.

The ALJ offered insufficient analysis of the effect of plaintiff's left ankle arthritis. His brief discussion was imprecise. In fact, the ALJ did not designate left ankle arthritis as a non-severe impairment; rather, he did not list it as an impairment at all. See, Tr. 13-14. The ALJ noted that plaintiff saw Dr. Martin in September 2011 for moderate left ankle edema with mild crepitus; he said that Dr. Martin diagnosed mild tenosynovitis of the left foot.[4] In fact, Dr. Martin's assessment was "Arthritis left ankle, with mild tenosynovitis left foot." The ALJ said that there was virtually no range of motion of the left ankle at that visit. Dr.

---

[4] "Tenosynovitis is inflammation of the lining of the sheath that surrounds a tendon (the cord that joins muscle to bone)." https://medlineplus.gov/ency/article/001242.htm, visited on October 3, 2018.

Martin's notes indicate that there was limited range of motion in September 2011, but the observation of virtually no range of motion was made in August 2013. (Tr. 14, 483-484).

The ALJ designated plaintiff's ankle problems as non-severe "because the evidence does not support that these impairments persisted 12 continuous months." (Tr. 14). That is obviously incorrect as to plaintiff's left ankle arthritis. The ALJ gave no other explanation of why he considered her left ankle arthritis to be non-severe.

The Commissioner agrees that the ALJ dismissed plaintiff's arthritis as non-severe because it did not persist for 12 continuous months. She offers no explanation of how this could possibly be correct. She also argues that the ALJ adequately assessed plaintiff's ankle problems by considering the fact that she declined treatment such as an MRI, physical therapy, and steroid injections. Doc. 25, p. 9. The ALJ and the Commissioner fail to recognize that those suggested treatments were for plantar fasciitis and right ankle and foot complaints, not left ankle arthritis. See, Tr. 486-489, 492-495. Plaintiff's failure to accept those treatment options is not relevant to her left ankle arthritis.

The Commissioner argues that ALJ considered that plaintiff declined surgery for her left ankle. Plaintiff testified that Dr. Martin suggested surgery to fuse her ankle joint, and that she refused because he could not guarantee that her arthritis would not return and because she would have to drag her foot because of the fusion. Nothing in Dr. Martin's records refutes plaintiff's testimony. The fact

that Dr. Martin suggested fusion surgery undercuts the ALJ's conclusion that her left ankle arthritis was not a severe impairment.

Plaintiff was in the "advanced age" category (57 years old) on the date last insured. If she were unable to perform her past work and has no transferrable skills, even if she were able to perform a full range of work at the light exertional level with no restrictions, she would be deemed disabled under the Medical-Vocational Guidelines ("Grids"), 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 2. Under the circumstances of this case, it was error to for the ALJ to fail to meaningfully assess the effect of her ankle arthritis in combination with her other impairments in determining whether she could do her past work.

The Court must conclude that ALJ Hanekamp failed to build the requisite logical bridge between the evidence and his conclusion. Remand is required where, as here, the decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012).

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff is disabled or that she should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

## **Conclusion**

The Commissioner's final decision denying plaintiff's application for social

security disability benefits is REVERSED and REMANDED to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE:   October 3, 2018.**

**s/ Clifford J. Proud**
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**
